**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


ANDRE C. LOWRY,                         )
                                        )       Civil Action No. 11 – 165
                        Petitioner,     )
                                        )
v.                                      )       Chief Magistrate Judge Lisa Pupo Lenihan
                                        )
MICHALE WENERONICZ; the                 )
ATTORNEY GENERAL OF THE                 )
COMMONWEALTH OF                         )
PENNSYLVANIA; and the                   )
DISTRICT ATTORNEY OF                    )
ALLEGNEY COUNTY,                        )

                        Respondents.


## MEMORANDUM ORDER ON PETITION FOR WRIT OF HABEAS CORPUS


**I.      CONCLUSION**

        For the reasons stated herein, the Petition for Writ of Habeas Corpus (ECF No. 4) will be

denied and a certificate of appealability will also be denied.


**II.     FACTUAL AND PROCEDURAL HISTORY**

        Petitioner, Andre Lowry (hereinafter referred to as "Lowry" or "Petitioner"), a state prisoner

currently incarcerated in Graterford, Pennsylvania under an April, 1998 sentence of life

imprisonment for first degree murder, has petitioned the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Even affording Petitioner all *pro se* consideration, each of his claims is meritless for reasons apparent in the documents of record before this Court.

The facts of the crimes as set forth by the State Court[1] are as follows:

On December 20, 1996, Petitioner was involved in an altercation with the murder victim, Jouron Miller ("Miller"), at Gene and Eileen's Bar in Braddock, Allegheny County, Pennsylvania. Earlier that evening Miller was at the bar with David Hawes ("Hawes") but they left and walked to the house of Lyon Tinsley ("Tinsley"), Miller's cousin. There, Miller related that Petitioner had pulled a gun on him in the men's room. The three men returned to the bar, as Miller wanted to confront Petitioner. Miller approached Petitioner and a verbal argument escalated to mutual pushing. An escalating fight amongst several additional patrons in the crowded bar then continued into the street. Hawes testified that once outside he walked around the corner from the bar and after hearing gunshots saw officers apprehend Petitioner and order him to the ground. Tinsley testified that he was pushed out of the bar by the crowd and Miller came out shortly thereafter with a bloody nose and followed by Petitioner. Miller and Petitioner continued to exchange words and, according to Tinsley, Petitioner fired a gun five or six times at Miller, who fell to the ground.

---

[1] See Commonwealth's Answer to Petition for Writ of Habeas Corpus ("Commonwealth's Answer") (ECF No. 21) at 11-17 (citing Jury Trial Transcript). A federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e).

At the time of the shooting, approximately 1:25 a.m., Officer Dominic DiLeo ("Officer DiLeo") of the Braddock Borough Police Department was on duty in his police vehicle at a red light at an intersection next to the bar, just down the street from the Braddock Police Station. Nothing was obstructing his view. He observed six to ten people rapidly exit the bar. He also saw a group of several black males standing on the sidewalk with the one in the middle – later identified as Petitioner - wearing a Pittsburgh Steeler jersey with white lettering and the number "10" on it. Officer DiLeo heard five or six shots and his attention was drawn to Petitioner because his knees were bent and his body made several "jerking" motions, moving repeatedly in a manner consistent with absorbing recoil from firing a gun. Petitioner was about ten feet away from Miller. Officer DiLeo observed Miller fall backwards and someone then holding him. Officer DiLeo saw Petitioner leave the area quickly.

Officer DiLeo immediately radioed dispatch, advised that shots were fired, and gave a description of Petitioner and his attire, as identifying the suspected shooter. Officer DiLeo then immediately went to the victim and noticed two gunshot wounds to Miller's trunk; Miller was transported to the hospital and died of his wounds. Officer DiLeo heard over the radio that Petitioner had been apprehended right around the corner, near the police station. An officer working in the station heard the call and headed down the street, and saw Petitioner "slowing down from a run to a fast walk" near a jitney stand. He ordered Petitioner to the ground.

Petitioner was unarmed.[2]  Officer DiLeo ran up and identified Petitioner as the suspect. Officer DiLeo patted Petitioner down, handcuffed him and read him his *Miranda* rights.

The person Officer DiLeo saw holding the victim after the shooting was Lyon Tinsley. Tinsley estimated he was approximately twelve feet away from Petitioner, whom he knew by name, when the shooting began. Tinsley testified that he saw Petitioner shoot the victim. He stated that the area was lit well enough for him to see and identified Petitioner as wearing a Steeler's jersey with the number "10" on it.  Four hours later, at 5:28 a.m., county detectives drove Tinsley past the police station while Petitioner was standing in the doorway of the police station, cuffed, and flanked by two police detectives. Tinsley identified Petitioner and stated there was no doubt in his mind that Petitioner was the man who shot the victim.

In an initial interview by Officer James Morton ("Officer Morton") at the Braddock police station around the corner from the bar, Petitioner denied having shot Miller.  But he gave a different statement during another interview after he was transferred to the homicide office.  In an interview with Allegheny County Police Officers Kevin Paul ("Officer Paul") and Jim Cvetic ("Officer Cvetic"), at which Officer Cvetic took notation of Petitioner's responses, Petitioner gave a statement (transcribed from Officer Cvetic's notes but unsigned) that Miller was involved in an altercation at the bar, but left and returned, and came up to Petitioner and begin "pointing

---

[2]  A bar patron, Andre Dutrieuille, testified that he walked away from the scene after hearing several gunshots, and retrieved a Colt .45 automatic pistol from the sidewalk on 6th Street, between the bar and the police station.  His father turned it into the police the next morning, and the six .45 caliber automatic shell casings recovered from the scene were matched as having been discharged from this gun.  See id. at 14-15.

at" him. He asserted that a fight broke out in the bar, that he tried to leave, and was hit several times and forced out of the bar. He said he heard gunshots and thought he'd been hit while still inside the bar. Id. at 15. Petitioner asserted that he grabbed a handgun from someone (David Lyons) as he was leaving the bar and believed the safety was on. When Miller and two others were making aggressive gestures at him outside the bar, Petitioner told them he had a gun and pointed it in the air, but as he lowered the gun, he heard someone firing shots and the gun in his hand "just started going off", which surprised him. Petitioner remembered the gun going off and shooting the victim in the midsection. Petitioner said he dropped the gun and walked around the corner to a jitney station, and that the shooting was unintentional. Id. at 16.[3] At trial, however, Petitioner again denied shooting Miller, or having a gun in his possession that night, or being in a continuing altercation with Miller or others outside the bar. He asserted that "some guy named Rob" shot Miller and that, on his way to his car which was parked near the jitney stand, Petitioner saw Rob running up the hill immediately before the officer stopped Petitioner instead.

In July, 1997, Petitioner was charged with one count of criminal homicide and two counts of uniform firearm violations (former convict not to possess firearms, 18 Pa. Cons. Stat. Ann. § 6105, and firearms not to be carried without a license, 18 Pa. Cons. Stat. Ann. § 6106 – the violation of Uniform Firearms Act charge under Section 6105 was severed from the other charges prior to trial). See Commonwealth's Answer at 2.

_____

[3] Cf. January 14, 2010 Superior Court Memorandum Opinion affirming dismissal of Petitioner's PCRA Petition at 6 (quoting trial testimony by Officer Paul that Petitioner, during homicide department interview, stated that the gun he had "just started going off", that "after he fired the gun, he dropped it on the street and walked away", that he "didn't mean to do what he did", and that the shooting was an accident). But cf. id. (also quoting trial testimony that Petitioner stated he shot Miller in the midsection, and that "it's [kill] or be [killed]").

5

On September 26, 1997, Petitioner's counsel filed an Omnibus Pretrial Motion asserting that the on-scene identification of Petitioner by Tinsley should be suppressed and that there was no probable cause for the arrest.  See id. at 2 (citing Omnibus Pretrial Motion attached as Ex. 3). After a multiple-day hearing that Fall, the suppression motion was denied by Order of January 20, 1998.

A jury trial was held from January 20-26, 1998.  Petitioner was found guilty of murder in the first degree and of the remaining firearms violation (not to be carried without a license).  In April, 1998, Petitioner was sentenced to a mandatory term of life imprisonment on the first degree murder conviction, and a consecutive term of 3-1/2 to 7 years incarceration for the firearms conviction.  See id. at 3.

In April 24, 1998 Petitioner's counsel filed a post-sentence motion (the "April 1998 Post-Sentence Motion") which was denied by operation of law on August 31, 1998.  Said Motion alleged that:

(1) The trial court erred by failing to suppress statements obtained from the defendant which were the fruit of an arrest unsupported by probable cause;

(2) The trial court erred in failing to suppress the in-court identification by Tinsley, which was tainted by an unduly suggestive identification procedure and fruit of the arrest without probable cause;

(3) The trial court erred by allowing impeachment based on adjudications of delinquency made when defendant was 13 years old;

(4) The evidence of record was insufficient to support the verdict of first degree murder; and

(5) The verdict was against the weight of the evidence.

See Commonwealth's Answer in Response to Petitioner's Supplemental Brief at 3.

In May, 1998 Petitioner filed his Notice of Appeal and in July, 1999, Petitioner, represented by counsel, properly filed a Statement of Matters Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and the Court issued its Opinion on the Concise Statements on July 29, 1999. See Commonwealth Exhibit 8.

On October 4, 1999 Petitioner's counsel filed a Brief for Appellant with the Pennsylvania Superior Court raising the following claims:

1.  Identification of Tinsley was improperly admitted in light of uncounseled and suggestive one-on-one confrontation.

2.  Juvenile delinquency adjudication was improperly admitted where it occurred eight years prior to trial when Lowry was 13.

On April 13, 2000, the Pennsylvania Superior Court affirmed the judgment of sentence. See id. at 5 (citing Opinion attached as Ex. 11) (hereafter "April 13, 2000 Superior Court Opinion on Direct Appeal"). Petitioner's Petition for Allowance of Appeal to the Pennsylvania Supreme Court on these two issues was filed on May 19, 2000 and denied on August 30, 2000. The Petitioner did not file a Petition for Writ of Certiorari with the Supreme Court of the United States.

On January 24, 2001, Petitioner filed a timely *pro se* Petition for Post Conviction Relief pursuant to the Pennsylvania Post Conviction Relief Act (the "PCRA"), 42 Pa. Const. Stat. § 9541, *et seq*. Counsel was then appointed to represent Petitioner, but on January 13, 2003 the Trial Court dismissed the Petition due to counsel's failure to file an amended petition. See Commonwealth's Answer at 6 (citing Ex. 16). On February 5, 2003, Petitioner filed a *pro se*

7

Notice of Appeal regarding the dismissal, and the trial court's opinion was dated April 28, 2003. See id. (citing Ex. 19). On September 23, 2003 Petitioner filed a *pro se* brief on appeal to the Pennsylvania Superior Court asserting that (1) the lower court erred by dismissing his PCRA Petition without appointing a substitute counsel to file an amended petition or a Finley letter, (2) he had been provided ineffective assistance of counsel in repeated respects, and (3) the trial court erred in not declaring a mistrial following the admission of hearsay evidence. See id. at 6-7 (citing Ex. 42). On March 15, 2004, the Superior Court vacated the trial court's January 13, 2003 dismissal and remanded the matter to the Court of Common Pleas for the appointment of new counsel, who – on July 18, 2007 – filed an Amended PCRA Petition (the "2007 Amended PCRA Petition").

The 2007 Amended PCRA Petition raised the claim that "Petitioner's appellate counsel was ineffective for failing to raise that the Commonwealth did not prove beyond a reasonable doubt that Petitioner was guilty of First Degree Murder." Id. at 8 (citing Ex. 22 at 13). An evidentiary hearing was held on September 25, 2007 and following further filings by counsel the Petition was denied by the PCRA Court's order dated December 19, 2008 (Machen, J.). On February 12, 2009, Petitioner filed a Concise Statement of Matters Complained of on Appeal regarding the post-conviction court's dismissal of his PCRA Petition, and on April 24, 2009 the trial court filed an Opinion addressing the issue. See id. (citing Ex. 28). Petitioner's counsel submitted his Superior Court appeal brief on June 22, 2009, raising the same issue and the Superior Court issued its Memorandum Opinion on January 14, 2010 affirming the judgment

of sentence.  See id. at 9 (citing Ex. 30-31).  Petitioner filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania which was denied on August 12, 2010.

On September 30, 2010 Petitioner filed a Motion for Post Conviction Relief which was dismissed by the Court on November 23, 2010, on grounds that it was his second PCRA Petition, that no exceptions applied, and the court was therefore without jurisdiction.  See Commonwealth's Answer in Response to Petitioner's Supplemental Brief at 8 (citing Commonwealth Ex. 35-36).  Petitioner then filed his Notice of Appeal and Concise Statement in January, 2011 and the Trial Court addressed them by Opinion of March 11, 2011.  See Commonwealth Ex. 40.  On May 26, 2011, Petitioner filed a *pro se* Brief to the Pennsylvania Superior Court alleging numerous claims of ineffectiveness of counsel.  See id. at 9-10.  The Superior Court affirmed by Memorandum Opinion of September 13, 2011, which noted the claims to be untimely.  See Commonwealth Ex. 46).

Meanwhile, in February, 2011, Petitioner filed his Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  (ECF No. 4.)[4]  Petitioner also filed a Motion to Stay which was denied on March 29, 2011.  The Petition raises the following:

> 1.  Identification of Petitioner by Lyon Tinsley was improperly admitted in light of the uncounseled and suggestive one-on-on confrontation at the Braddock police station, as well as the subsequent in court identification where Tinsley testified on cross-examination during a September 30, 1997 suppression hearing that he was told by police officers they "got the guy that did it" and Tinsley was supposed to "identify him".

---

[4] The Court observes that the Petition was timely filed, for reasons correctly explicated in the Commonwealth's Answer at 18-20.

2. Petitioner's trial and appellate counsel provided ineffective assistance for failure to challenge the competency of the court's jurisdiction due to lack of probable cause in that the magistrate judge's actions, leading to Petitioner's detention, were based on Affidavits by police detectives that contained material, deliberately-misleading misstatements (*i.e.*, reporting time of death as 1:41 a.m. instead of 2:00 a.m.; stating that there were witnesses available to testify against Petitioner at future court proceedings; stating that Petitioner was taken back to crime scene and was identified by an eyewitness (reiterating unlawfulness of identification by Tinsely and asserting "no independent basis to establish Petitioner's identification"); stating that Petitioner admitted shooting the victim in a police interview when he made no such admission *to the detectives providing Affidavits* of probable cause to magistrate).

3. Trial and Appellate Courts erred where "the weight of the evidence was against the verdict" where evidence (a) was tainted by admittance of illegally obtained identification (*i.e.*, Tinsley's assertedly intoxicated identification of Petitioner) and "inadmissible hearsay testimony and alleged unsigned statement supposedly given by Petitioner" (*i.e.*, Officer Paul's testimony regarding Petitioner's interview statement admitting an unintentional shooting); and (b) was contrary to forensic evidence suggesting Petitioner was not at distance from victim to have been shooter.

4. Trial and All Other Counsel provided ineffective assistance by – as to trial counsel: (1) failing to object to Officer Paul's hearsay testimony; (2) failing to call Officer Cvetic to testify regarding Petitioner's alleged statement; (3) introducing hearsay evidence at trial (*i.e.* that Petitioner "pulled a gun on the victim" when Petitioner "was going to testify that he did not have a weapon"); (4) failing to conduct an independent investigation of crime scene or interview Officer Cvetic; (5) making prejudicial remarks during closing arguments (*i.e.*, that Petitioner "became so enraged that he pulled a gun and pointed it at Jouron Miller"); and as to subsequent counsel: (6) failing to raise trial counsel's ineffective assistance on appeal and preserve meritorious issues of unauthenticated exculpatory evidence, lack of probable cause and right to confront accuser (*i.e.*, Officer Cvetic).

(ECF No. 4 at pp. 2-17)

In June, 2013, Petitioner moved to correct part of his exhaustion/procedural default argument on the basis of Martinez v. Ryan, 132 S.Ct. 1309 (2012). The supporting briefs were filed by the parties.

The Court has now given Petitioner's claims the full consideration it has afforded each individual appearing before it and requesting review of underlying criminal proceedings and State Court appeals - and the accompanying extensive records - in the context of a Petition for Writ of Habeas Corpus.

## III. GENERAL STANDARDS GOVERNING FEDERAL HABEAS CORPUS REVIEW

### A. Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). A petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). A petitioner shall not be deemed to have exhausted state remedies, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). Petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state prisoner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). And an application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

It should also be noted, for purposes of this Petition, that a Federal habeas claim is "fairly presented" to the State courts if the Petitioner has presented the factual and legal substance to those Courts in a manner that put them on notice that a federal claim was being asserted. Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001). The petition must show that the claims he is raising in Federal Court are the "substantial equivalent" of those presented in State Court. Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). In other words, the petitioner must afford the state system "the opportunity to resolve the federal constitutional issues before he goes to the federal court for habeas relief." Zicarelli v. Gray, 543 F.2d 466, 472 (3d Cir.1976) (en banc) (internal quotation marks & citations omitted). Fair presentation by the petitioner to the state courts is sufficient; the claims "need not have been considered or discussed by those courts." Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir.1984) (citations omitted).

## B.  Procedural Default Doctrine

Even where a claim has been properly exhausted, a federal court may nonetheless be precluded from reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678;

<u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 678 (3d Cir. 1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. <u>Coleman</u>, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. <u>Id.</u>; <u>Sistrunk</u>, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. <u>Glass v. Vaughn</u>, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); <u>Carter</u>, 62 F.3d at 595. However, the procedural default doctrine only applies when a state procedural rule is consistently or regularly applied. <u>Banks v. Horn</u>, 126 F.3d 206, 211 (3d Cir. 1997) (quoting <u>Johnson v. Mississippi</u>, 486 U.S. 578, 588-89 (1998)). A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>Carter</u>, 62 F.3d at 595.

To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494. Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This exception to the procedural default doctrine is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).

The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant. Sawyer v. Whitley, 505 U.S. 333, 340 (1992). In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts. In order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated. Schlup v. Delo, 513 U.S. 298, 324 (1995). "To be credible, such a claim requires [the] petitioner to support his [or her] allegations of constitutional error with new reliable

14

evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. If this requirement is satisfied, the federal court must consider "whether it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004). This standard "does not merely require a showing that a reasonable doubt [as to the petitioner's guilt] exists in the light of the new evidence, but rather that no reasonable juror would have found the [petitioner] guilty." Schlup, 513 U.S. at 329. "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." House v. Bell, 547 U.S. 518, 538 (2006).

While the petitioner's innocence need not be determined with "absolute certainty" at this "gateway stage," his or her burden is to demonstrate that, in light of the new evidence, it is more likely than not that *any* reasonable juror would have reasonable doubt as to his or her guilt. Id. In the habeas corpus context, a federal court sits to ensure that an individual is not imprisoned in violation of the Constitution and laws of the United States, "not to correct errors of fact." Herrera v. Collins, 506 U.S. 390, 400 (1993). Consequently, a finding of "actual innocence" is not an independent ground for habeas corpus relief, but rather a "gateway" through which a petitioner can pass to have a federal court consider underlying claims that would otherwise be subject to procedural default. Id. at 404. In the absence of new evidence of the petitioner's innocence, the existence of an underlying constitutional violation provides a federal court with no basis for adjudicating a procedurally defaulted claim. Goldblum v. Klem, 510 F.3d 204, 225-

226 (3d Cir. 2007).  Only after the presentation of new evidence may a federal court proceed to

consider whether, in light of *all* relevant evidence, it is more likely than not that no reasonable

juror would vote to convict the petitioner of the crime for which he or she is incarcerated.

House, 547 U.S. at 537-39; Goldblum, 510 F.3d at 225-26.

Finally, the United States Court of Appeals for the Third Circuit has instructed that a

petition containing exhausted and unexhausted but procedurally barred claims is not a mixed

petition requiring dismissal under Rose v. Lundy, 455 U.S. 509 (1982).  *See* Wenger v. Frank,

266 F.3d 218, 227 (3d Cir. 2001).  Instead, the Court of Appeals held that the district court

should review the merits of the exhausted claims but must not decide the merits of the claims

that are barred under the procedural default doctrine.  Id.

**C.  Standard of Review for Exhausted (and not Procedurally Defaulted) Claims**

In describing the role of federal habeas proceedings, the Supreme Court of the United

States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a
> conviction or sentence . . . .  The role of federal habeas proceedings, while
> important in assuring that constitutional rights are observed, is secondary and
> limited.  Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996,

Pub.L.No. 104-132, 100 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under

law." Bell v. Cone, 535 U.S. 685, 693 (2002).

16

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'"  Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  "Clearly established Federal law" is determined as of the date of the relevant state-court decision.  Greene v. Fisher, 606 F.3d 85, 95 (3d Cir. 2010), aff'd, Greene v. Fisher, 132 S. Ct. 38 (2011).  And few state court decisions are "contrary to" such law.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent.  "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1)

'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Id. (quoting Williams, 529 U.S. at 407). The focus is on whether the law has been applied in an "objectively unreasonable" – rather than incorrect - manner. Bell, *supra*; Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

The Supreme Court has illustrated the deference that the federal courts must accord to state court decisions. In Renico v. Lett, 130 S. Ct. 1855 (2010), the Supreme Court observed that:

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not whether it was an abuse of discretion for her to have done so -- the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." § 2254(d)(1).

Lett, 130 S. Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision -- or, for that matter, the trial judge's declaration of a mistrial -- was right or wrong. The latter question, in particular, is a close one. . . . [F]or the reasons we have explained -- *whether the trial judge was right or wrong is not the pertinent question under AEDPA.*

Id. at 1865, n.3 (emphasis added). See also Harris v. Ricci, 607 F.3d 92 (3d Cir. 2010).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is

18

to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." <u>Campbell v. Vaughn</u>, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. <u>Id</u>. (citing <u>Marshall v. Longberger</u>, 459 U.S. 422, 433 (1982)). Where the state court fails to adjudicate or address the merits of a petitioner's claims, unless procedurally defaulted, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001).

As to evidentiary rulings made by the trial court, it is well settled that such decisions are vested in the trial court's sound discretion. An evidentiary error is deemed harmless on appeal where the appellate court believes beyond a reasonable doubt that the error could not have contributed to the verdict. <u>See</u> <u>Commonwealth v. Story</u>, 383 A.2d 155, 164-66 (1978) (delineating factors to be considered, including (a) whether error was prejudicial and, if so, whether it was *de minimis*; (2) whether erroneously admitted evidence was merely cumulative; and (3) whether evidence of guilt was so overwhelming that prejudicial effect of error was insignificant). <u>See also</u> <u>Commonwealth v. DeJesus</u>, 880 A.2d 608, 614 (2005).

Petitioner's claims will be reviewed in accordance with the standards set forth above.

## IV. <u>PETITIONER'S CLAIMS</u>

The Court observes, as a threshold matter, that following some initial debate as to whether each of Petitioner's claims had been exhausted, the parties now concur that the exhaustion

requirement has been met. See Petitioner's June 14, 2013 Motion Seeking Permission to Correct Part of the Exhaustion Procedural Default Argument (ECF No. 42); Commonwealth's July 17, 2013 Answer in Response to Petitioner's Supplemental Brief at 12 ("Commonwealth's July, 2013 Answer to Supplemental Brief") (ECF No. 46) ("[I]t now appears that Petitioner has exhausted the four claims he raises in his *habeas corpus* petition."). The Commonwealth maintains, however, that all but Petitioner's first claim remain procedurally defaulted. See Commonwealth's July, 2013 Answer to Supplemental Brief at 13-15 (explaining that Petitioner failed to properly raise these claims in a direct or PCRA appeal to the State Court and is time-barred from doing so now, thus they are procedurally defaulted). It also maintains that Petitioner cannot, on this record, overcome the procedural default bar by demonstrating substantial ineffectiveness of his appellate counsel (under Martinez). See id. at 15-16.

In light of the unusually protracted history of State Court proceedings, remand and multiple appeals in this case; the issues raised (expressly, or potentially in light of applicable *pro se* lenience) in various briefs at various stages; and considerations regarding which claims may have been "fairly presented" in State Court and addressed on the merits (as opposed to denied on purely procedural grounds) thereby, this Court has afforded Petitioner the "benefit of the doubt", extended him the utmost *pro se* consideration, and reviewed his claims on the merits under the standards applicable to his Petition for Writ of Habeas Corpus. See, *supra*, Section II. [5] The

---

[5] Cf. Kindler v. Horn, 542 F.3d 70, 79 (2008) (stating that "[a] procedural rule that is consistently applied in the vast majority of cases is adequate to bar federal habeas review even if state courts are willing to occasionally overlook it and review the merits of a claim for relief where the rule would otherwise apply"); Beard v. Kindler, 130 S.Ct. 612 (2009) (confirming that "discretionary procedural rule" *can serve* as adequate ground to bar federal habeas review).

Court further observes that, as its explication of Petitioner's claims and the Commonwealth's summation reflects, absent this consideration, Petitioner could not – on his pleadings or the record - overcome any applicable procedural default bar via a showing of "cause and prejudice" or a "fundamental miscarriage of justice" (innocence and new evidence) as to his claims. See discussion of applicable standards, *supra* at Section II. Thus to Petitioner's claims:

**A. Identification of Petitioner by Lyon Tinsley was improperly admitted**

As cogently addressed by the Superior Court in its April 13, 2000 Opinion on Direct Appeal (Ex. 11, as cited *supra*), Petitioner's contentions regarding Tinsley's identification in an un-counseled and suggestive one-on-one confrontation outside the Braddock Police Station are misguided, groundless and unmaintainable on habeas review where (1) Tinsley's police station identification of Petitioner was never admitted at trial; (2) an independent basis existed for Tinsley's *in-court* identification, rendering that identification properly admissible under Commonwealth v. Abdul-Salaam, 678 A.2d 342 (Pa. 1996)[6] and Commonwealth v. Carter, 643 A.2d 61 (Pa. 1994);[7] and (3) the Commonwealth introduced the testimony of (a) Officer DiLeo

_____

[6] Under Abdul-Salaam factors considered in determining an independent basis are (1) opportunity of the witness to view the accused at the crime; (2) degree of attention; (3) accuracy of prior description; (4) level of certainty demonstrated; (5) length of time between crime and confrontation. 678 A.2d at 349. See also Neil v. Biggers, 409 U.S. 188, 198-99 (1972) (same). The Superior Court noted Tinsley's acquaintance/prior interaction with Petitioner, his detailed description of Petitioner and his apparel, his proximity during and specific testimony as to witnessing the shooting. See April 13, 2000 Superior Court Opinion on Direct Appeal at pp. 5-7.

[7] Under Carter, in-court identification may be made despite a suggestive pre-trial identification if the Commonwealth establishes by clear and convincing evidence that such identification was not a product of the events occurring between the time of the crime and the in-court identification, *i.e.*, if under the totality of the circumstances it "had an origin sufficiently distinguishable to be purged of the primary taint." 643 A.2d at 71.

who witnessed the shooting and identified Petitioner as the shooter and (b) Officer Paul, who was present at Petitioner's own homicide department interview during which Petitioner admitted an unintentional shooting of Miller. See April 13, 2000 Superior Court Opinion on Direct Appeal at pp. 5-7; Commonwealth's Answer at 26-28. See also Commonwealth's Answer at 32-35 (explicating, similarly, independent basis for in-court identification of Petitioner despite suggestive presentation of Petitioner to Tinsley at police station, *i.e.*, Tinsley had a previous knowledge of/acquaintance with Petitioner, he interacted with Petitioner at the bar that night prior to the shooting and observed Petitioner's altercation with Miller, he witnessed the shooting from a distance of approximately 12' in a well-lit area outside the bar, an officer arrived almost immediately, Tinsley provided a detailed description of Petitioner, and Tinsley accompanied Miller to the hospital where he died).

As stated above, this Court is required to review Petitioner's claims in accordance with the standard of review set forth in the AEDPA. Specifically, in order to be entitled to relief, Petitioner must show that the Pennsylvania Court's decision in this instance was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States (or that it was premised on an unreasonable determination of the facts in light of the evidence presented).[8] This is a "difficult to meet," and "highly deferential

---

[8] Some Circuit Court of Appeals have restricted their review under the AEDPA to United States Supreme Court decisions alone. *See*, *e.g.*, Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (considering itself barred from examining "lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law"). The Court of Appeals for the Third Circuit, however, has concluded that decisions of federal courts below the level of the United States Supreme Court may be helpful in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court

standard" as to which Petitioner carries the burden of proof.  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (internal citations omitted).

A state court decision fails the "contrary to" prong of AEDPA if the state court reaches a conclusion opposite to the Supreme Court's own conclusion on a question of law or decides the case differently where the Supreme Court was confronted by a set of materially indistinguishable facts.  McMullen v. Tennis, 562 F.3d 231, 236 (3d Cir. 1990) (quotation and citations omitted). And a state court ruling is considered an "unreasonable application" if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply.  Harris v. Ricci, 607 F.3d 92, 96 (3d Cir. 2010).

It is clear from the record that the State Court's ruling in this matter was neither contrary to nor an objectively unreasonable application of clearly established Federal law; nor was there any unreasonable determination of facts in light of the evidence presented.  This Court looks to the April 13, 2000 Superior Court Opinion on Direct Appeal as discussed, *supra*, and concludes that Petitioner has not met his burden of showing entitlement to *habeas corpus* relief as to his first claim.[9]

---

precedent, as well as "helpful amplifications" of that precedent.  Moore v. Morton, 255 F.3d 95, 105 (3d Cir. 2001) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999)).

[9] The Court also finds interesting, but need not reach, the Commonwealth's observation that a question of whether Tinsley's police station identification was *improperly admitted* would raise a Fourth Amendment suppression issue not cognizable on habeas review.  See Commonwealth's Answer at 29 (discussing full and fair opportunity to present this issue in State Court motions and suppression hearing); id. (citing Stone v. Powell, 428 U.S. 465, 494 (1976)).

**B. Petitioner's trial and appellate counsel provided ineffective assistance for failure to challenge the competency of the State Court's jurisdiction due to lack of probable cause as to Magistrate Judge's actions**

Petitioner asserts that he was repeatedly provided ineffective assistance of counsel related to counsel's failure to challenge the court's jurisdiction owing to lack of probable cause for his arrest. See generally Commonwealth's Answer at 36 (citing Affidavit of Probable Cause, Ex. 41) (summarizing that under Strickland v. Washington, 466 U.S. 668, 687 (1984), a sufficient showing of ineffectiveness of counsel requires a showing both (1) that counsel's performance was so deficient that s/he failed to function as the "counsel" guaranteed by the Sixth Amendment; and (2) the defense was so seriously prejudiced thereby that the petitioner was deprived of a fair trial).

The Court largely concurs with the Commonwealth's analysis, *i.e.*, Petitioner fails to raise a claim cognizable for habeas review. More specifically:

---

The Court also need not reach the Commonwealth's assertion that Petitioner was unentitled to counsel at the time of Tinsley's drive-by identification because Petitioner had not yet been "charg[ed] . . . with any crime whatsoever". Commonwealth's Answer at 31; cf. also Simmons v. United States, 390 U.S. 377, 382 (1968) (entitlement to counsel for post-indictment lineup as a "critical stage of the prosecution"). But cf. Commonwealth's Answer at 15 (indicating that incident occurred at approximately 1:25 a.m., Petitioner was quickly apprehended around corner from bar and quite near police station, and that Petitioner was interviewed at the Braddock station at 3:30 a.m. and transferred to the homicide office; further indicating that "[a]ccording to Petitioner" he was stopped on the street by an officer, asked if he was being charged with the shooting and told that he was); id. at 31 (indicating that "[a]fter a couple of hours, the police officers finally learned of the identity of witness Tinsley and his whereabouts" and it was "approximately [28] minutes" after the police identification and interview of Tinsley that Tinsley identified Petitioner at the Braddock Police Station); cf. also January 14, 2010 Superior Court Opinion at 5 (noting that homicide department interview began at 6:44 a.m.).

Despite Petitioner's characterization of this claim, his Petition as filed is essentially bereft of factual and legal support relating it to ineffectiveness of counsel. Cf. Commonwealth's Answer at 37. Moreover, (1) Petitioner's trial counsel pursued the question of probable cause in pre-trial motions, at the suppression hearing, and/or during trial as noted fully, *supra*; and (2) the evidence of record does not indicate that there was insufficient evidence to arrest Petitioner – to the contrary. See id. at 38-39. Petitioner's appellate counsel had no obligation, therefore, to raise the claim on appeal. See, *e.g.*, Strickland, 466 U.S. at 691 (failure to pursue "fruitless" claims "may not be challenged as unreasonable"); Parrish v. Fulcomer, 150 F.3d 326 (3d Cir. 1998) (counsel not ineffective for failing to raise meritless claim).

As to other possible aspects of this claim as presented by Petitioner, affording him the utmost leniency:

First, to the extent Petitioner intends argument that there was no probable cause for his arrest, an illegal arrest provides no basis for collateral attack on a judgment obtained after notice and fair trial. See Shack v. Attorney General of State of Pennsylvania, 776 F.2d 1170, 1172 (3d Cir.1985) ("[W]hen one ... is convicted of a crime after notice and a fair trial, defects in the pretrial proceedings are not ordinarily considered sufficiently 'fundamental' to justify collateral attack.") (citing U.S. v. Crews, 445 U.S. 463, 474, (1980)).

Second, any Fourth Amendment claim Petitioner may be intending hereby will also be denied. When a duly convicted State prisoner has had a full and fair opportunity to litigate a Fourth Amendment claim, the refusal of the state courts to grant relief cannot provide a basis for federal habeas review. See Stone v. Powell, 428 U.S. 465 (1976) (claim that trial evidence was

obtained in unconstitutional search or seizure is not ground for federal *habeas corpus* relief where state has "provided opportunity for full and fair litigation of a Fourth Amendment claim"); see also Cardwell v. Taylor, 461 U.S. 571 (1983) *(per curiam)* (same).

The Third Circuit has held that a "full and fair opportunity" requires State procedures by which the defendant could have litigated his Fourth Amendment claim. See Hubbard v. Jeffes, 653 F.2d 99, 103 (3d Cir.1981); Boyd v. Mintz, 631 F.2d 247, 250 (3d Cir.1980). And it has determined that review of a Fourth Amendment claim in a *habeas corpus* application is proper only if: (1) the state has not provided corrective procedures to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from employing it because of an unconscionable breakdown in that process.

Pennsylvania provides an approved mechanism for litigating Fourth Amendment claims and Petitioner availed himself of the State process. His counsel attacked the Affidavit of Probable Cause and the probable cause for his arrest in the Omnibus Pre-Trial Motion and Brief in Support filed with the trial court on September 26, 1997. He also addressed those issues at the suppression hearing held September 30 through October 1, 1997, and had full and fair opportunity to litigate the issue on appeal. See Commonwealth's Answer at 37 (citing Ex. 3). Petitioner has alleged no facts that would demonstrate any breakdown of the Pennsylvania Court process. Accordingly, as under Stone, to the extent Petitioner intends a Fourth Amendment claim it is denied.

**C. Trial and Appellate Courts erred where "the weight of the evidence was against the verdict"**

As the Commonwealth observes, a "weight of the evidence" argument may not properly ground a claim for federal habeas review, "since it requires reassessment of the credibility of the evidence presented at trial." Commonwealth's Answer (citing Walker v. Kerestes, 2013 WL 6667776, 4 (E.D. Pa. Dec. 18, 2013) (denying claim that verdict was against the weight of the evidence as not cognizable in habeas corpus proceeding) (citing Tibbs v. Florida, 457 U.S. 31, 37–38 (1982) (weight of evidence claim raises questions of credibility)); Mattis v. Klopotoski, 2008 WL 2909859, at *4 (E.D. Pa. July 28, 2008). See also McKinney v. Walsh 2012 WL 707039, *5 (E.D. Pa. 2012).

More specifically, as our sister District Court has repeatedly concluded,[10] a claim that a conviction was against the weight of the evidence is non-cognizable in a *habeas corpus* case because Federal habeas courts are bound by the factual findings of the State courts and, accordingly, cannot reassess the weight of the trial evidence which was before those courts. Cf. Marshall v. Lonberger, 459 U.S. 422, 434–35 (1983) (federal courts are not permitted "to redetermine [the] credibility of witnesses whose demeanor has been observed [only] by the state trial court").

---

[10] See, e.g., Berry v. Pennsylvania, , 2011 WL 7068969 at *12 (E.D. Pa. Dec.8, 2011); Alamo v. Frank, 1999 WL 79659 at *1 n. 2 (E.D. Pa. Jan.15, 1999); Smith v. Vaughn, 1997 WL 338851 at *8 (E.D. Pa. June 17, 1997).

That said, in <u>Tibbs v. Florida</u>, the United States Supreme Court agreed with the lower court's

distinction between a (non-cognizable) "weight of the evidence" and a (cognizable)

"insufficiency of the evidence" claim:

> A conviction rests upon insufficient evidence when, even after viewing the
> evidence in the light most favorable to the prosecution, no rational factfinder
> could have found the defendant guilty beyond a reasonable doubt. A reversal
> based on the weight of the evidence, on the other hand, draws the [reviewing]
> court into questions of credibility. The weight of the evidence refers to a
> determination by the trier of fact that a greater amount of credible evidence
> supports one side of an issue or cause than the other.

457 U.S. at 37 (internal citations to lower court opinion omitted).[11]

Thus, where the pleadings of a *pro se* Petitioner, liberally construed, may be read to have

"fairly presented" an insufficiency of the evidence claim to the State Court and to intend an

assertion (however inartfully drafted) of that same claim before the Federal Court, said claim

---

[11]    <u>See also</u> <u>Commonwealth v. Vogel</u>, 461 A.2d 604, 609 (1983) (noting that the "distinction
between a determination of the weight of the evidence, which allows the trial court to make an
independent assessment of the credibility of the prosecution's case, and a sufficiency
determination, which confines the reviewing tribunal to accepting the evidence produced by the
prosecution in the most favorable light, is well established"); <u>Commonwealth v. Widmer</u>, 744
A.2d 745, 751 (2000) ("A claim challenging the sufficiency of the evidence is a question of law.
Evidence will be deemed sufficient to support the verdict when it establishes each material
element of the crime charged and the commission thereof by the accused, beyond a reasonable
doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts,
in contravention to human experience and the laws of nature, then the evidence is insufficient as
a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in
the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable
inferences to be drawn from the evidence."); <u>id. at 751-52</u> (concluding that, in contrast, a weight
claim "concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is
under no obligation to view the evidence in the light most favorable to the verdict winner. An
allegation that the verdict is against the weight of the evidence is addressed to the discretion of
the trial court.... [T]he role of the trial judge is to determine that notwithstanding all the facts,
certain facts are so clearly of greater weight that to ignore them or to give them equal weight
with all the facts is to deny justice.").

should also be considered.  See Rainey v. Varner, 603 F.3d 189, 198 -200 (3d Cir. 2010) (concluding that *pro se* Petitioner, not charged with "an understanding of the intricacies of Pennsylvania criminal procedure" had, through "internally inconsistent" filings nonetheless fairly presented issue of insufficiency, and not only weight, of the evidence sufficient to sustain first-degree murder charge where he challenged evidence of intent); id. (noting that PCRA Court, despite titling section of opinion "Weight of the Evidence", discussed Superior Court's review of evidence on direct appeal, and that analysis while "cursory" considered petitioner's claim as a sufficiency challenge); id. (further noting that while Petitioner used the term "weight" he "actually contended that the evidence was not sufficient" to establish intent) ; id. ("Whether the Commonwealth has shown or established the existence of an element of a crime is an inquiry into the sufficiency of the evidence, not its weight").[12]

Here, the Superior Court, in its January 14, 2010 Memorandum Order affirming the dismissal of Petitioner's PCRA Petition, expressly addressed Petitioner's issue on appeal that "Appellate counsel gave ineffective assistance for failing to raise the claim that there was insufficient evidence to support the conviction" where the Commonwealth allegedly failed to prove the element of specific intent.  See  Superior Court's January 14, 2010 Memorandum Order at 8-10 (explaining that Petitioner's "underlying claim [was] a challenge to the sufficiency of the evidence", applying the appropriate sufficiency standard of review (citing Commonwealth v. Troy, 832 A.2d 1089, 1092 (Pa. Super. 2003)), noting the law in Pennsylvania that a

---

[12]  Compare Snyder v. Warden, Marion Correctional Inst. 2013 WL 1758614, *3 (S.D. Ohio 2013) (finding insufficiency of evidence claim procedurally defaulted where petitioner had brought only a weight of the evidence claim in State Court).

conviction for first-degree murder may be sustained by proof of the element of intent "inferred from the use of a deadly weapon on a vital part of the victim's body", and concluding that the evidence established was sufficient). In addition, Petitioner followed his Petition for Writ of Habeas Corpus (asserting, in a claim headed as "the weight of the evidence was against the verdict", that "[t]he evidence presented at trial did not support a guilty verdict") with a June 13, 2011 Response to Commonwealth's Answer to 2254 Petition and Memorandum of Law In Support asserting expressly that "the evidence presented at trial was insufficient to sustain a verdict of any degree and the verdict was against the weight of evidence." Petitioner's June 13, 2011 Response to Commonwealth's Answer to 2254 Petition and Memorandum of Law In Support at 18. This Court has, accordingly, also considered a possible sufficiency of the evidence claim under the appropriate habeas standard and concludes that any such claim must also be denied.

The federal constitutional standard for evaluating an alleged violation based upon a sufficiency of the evidence claim is found in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). Under <u>Jackson</u>, the Federal Court is to determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319 (emphasis in original). A habeas petitioner is entitled to relief only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt." <u>Id.</u> at 324. <u>See</u> <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir.1997) (applying <u>Jackson</u> standard), *cert. denied,* 522 U.S. 1059 (1998). Federal review of a sufficiency of the evidence claim under <u>Jackson</u> must be based on state law,

that is, the substantive elements of the crime must be defined by applicable state law; although the minimum amount of evidence required by the Due Process Clause is purely a matter of federal law.  Jackson, 443 U.S. at 324 n. 16; Coleman v. Johnson, 132 S.Ct. 2060, 2064 (2012). The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas sufficiency review.  Id. at 319.

It is clear that, as the Superior Court observed, a rational juror could have inferred from the evidence that Petitioner intended to kill Miller.  See Superior Court's January 14, 2010 Memorandum Order at 9-10 (noting that evidence demonstrated prior confrontation, Petitioner's possession of gun, altercation outside bar, Petitioner's firing shots 18-24" from Miller and in his direction, wounds to Miller's chest and abdomen, trigger pressure and release were required to fire successive shots (i.e., gun could not just "go off"), and casings from retrieved gun were matched to crime).

The jury in this case was convinced, and the only question under Jackson  is whether that finding was so insupportable as to fall below the threshold of rationality. The State Courts did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).  See also Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012) (quoting Jackson, 443 U.S. at 319; Cavazos v. Smith, 565 U.S. 1, 4 (2011)).  Because the State Court's conclusion was a reasonable determination of the facts in light of the evidence presented, and

was neither contrary to, nor an unreasonable application of, clearly established federal law, any

insufficiency of the evidence claim by Petitioner is denied.[13]

## D. Trial Counsel and All Other Counsel provided ineffective assistance

Petitioner contends that he was provided ineffective assistance for the following reasons:

As to trial counsel: (1) failing to object to Officer Paul's hearsay testimony;[14] (2) failing to call

Officer Cvetic to testify;[15] (3) introducing hearsay evidence at trial (*i.e.* that Petitioner "pulled a

gun on the victim" when Petitioner "was going to testify that he did not have a weapon");[16] (4)

---

[13]  See Coleman, 132 S.Ct. at 2062 (reiterating that Jackson claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.'") (quoting Renico v. Lett, 559 U.S. 766 (2010)).

[14] Petitioner objects that Officer Paul's testimony was "prejudicial hearsay" because he did not conduct the interview or take notes" of it.  See Petition, unnumbered at Ground Four.  Compare *supra* (Paul was an officer present during the homicide interview, together with Officer Cvetic, who made the transcription); Commonwealth's Answer in Response to Supplemental Brief at 18 (noting that "Detective Paul was present throughout Petitioner's interview" and he had "first-hand knowledge of the information relayed by Petitioner during this interview"); id. ("moreover, Detective Paul was allowed to have his memory refreshed by any document, including the report filled out by Detective Cvetic.") (citing Fed. Rules of Evidence, Rule 612).

[15]  Petitioner objects that his counsel did not call Officer Cvetic, thus denying Petitioner "his constitutional right to confront his accuser" and asserts counsel "should have demanded that detective Cvetic be brought to . . . testify to the validity of the unauthenticated remarks made by detective Paul." Id.  Compare note, *supra* (regarding personal knowledge of Officer Paul).

[16]  Petitioner objects that his counsel stated that Petitioner had pulled a gun on the victim, knowing "that Petitioner was going to testify that he did not have a weapon."  Id.  Compare

failing to conduct an independent investigation of crime scene or interview Officer Cvetic;[17] (5) making prejudicial remarks during closing arguments (*i.e.*, that Petitioner "became so enraged that he pulled a gun and pointed it at Jouron Miller");[18] and as to subsequent counsel: (6) failing to raise trial counsel's ineffective assistance on appeal and preserve meritorious issues of unauthenticated exculpatory evidence, lack of probable cause and right to confront accuser (*i.e.*, Officer Cvetic).[19]

---

*supra* (discussing evidence regarding Petitioner's possession of a gun).  Compare *supra* (discussion of trial evidence).  He further objects that "trial counsel should have also interviewed detective Jim Cvetic" because if "Cvetic's testimony [were] different from dectective Paul's [it] would have proved that Petitioner did not commit the crimes charged."  Id.  The Court observes that, as Petitioner has emphasized repeatedly, Officer Paul's testimony was regarding, and in concurrence with Officer Cvetic's transcript of, the homicide department's joint-Officer interview of Petitioner.  See Commonwealth's Answer in Response to Supplemental Brief at 19 ("There was no indication Detective Cvetic would have testified inconsistent to the information found in his report or any differently than Detective Paul . . . . Thus, calling Detective Cvetic to testify could have proven more harmful . . . to Petitioner's case. . . .").  Trial counsel's conduct was of course, therefore, entirely reasonable, as were the State Court related determinations.

[17] Petitioner opines that had his counsel conducted an "independent investigation of the crime scene" and "forensic evidences", he "would have found out that Petitioner was actually innocent."  Id., unnumbered at Ground Four.  Compare Commonwealth's Answer in Response to Supplemental Brief at 19 (noting that Petitioner made no demonstration regarding trial counsel's examination of the evidence, or how going to the scene or further investigating the Commonwealth's witnesses would have proven his innocence); id. (further noting trial transcript evidence of counsel's familiarity with evidence, witnesses, and case).

[18] See note *supra* regarding Petitioner's similarly-based claim of inadequacy of counsel at point (3).  See also Commonwealth's Answer in Response to Supplemental Brief at 20 (noting that closing remarks in context were consistent with, and advanced, counsel's theory of case and refutation of Commonwealth's)

[19] Here again Petitioner's assertions intermingle and overlap those made elsewhere.  See *supra*, discussion in text of Opinion.

Having concluded that Petitioner exhausted his layered ineffectiveness claim, and in accordance with its observations *supra* regarding the more extensive State Court proceedings and the rather muddled/oblique/varied assertions by Petitioner throughout, this Court will proceed to address whether the State Courts' denial of Petitioner's ineffective assistance claims "was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). As noted *supra*, a claim of ineffective assistance of counsel is assessed under the Strickland test. In Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987, the Pennsylvania Supreme Court refined the Strickland performance and prejudice test into a three-part inquiry under which, to prove counsel ineffective, the petitioner must show that (1) the underlying legal issue has arguable merit; 2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell petitioner from counsel's act or omission.[20]

With respect to the sequence of consideration, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697. See Rainey v. Varner, 603 F.3d 189, 200 - 201 (3d Cir. 2010).

---

[20] See also Commonwealth v. Collins, 888 A.2d 564, 573 (Pa. 2005) (noting that ineffectiveness claims are distinct issues under the PCRA to be reviewed under the three-prong ineffectiveness standard announced in Pierce).

Even assuming underlying merit (in this case a significant assumption as to each enumerated issue), Petitioner's assertions that his trial counsel was ineffective in multiple instances simply cannot be maintained given his patent inability to establish that any of the asserted deficiencies in his attorney's performance would have sufficiently prejudiced his defense.[21]  See extensive explication of trial transcript, evidentiary findings, and State Court determinations, *supra*.  The properly admitted and uncontradicted evidence of guilt was itself overwhelming.  Thus it is certainly properly concluded that, even if counsel had comported himself as Petitioner preferred,[22] no different result would have obtained.  Cf. Commonwealth v. Colavita, 993 A.2d 874, 887 (Pa. 2010); Commonwealth v. Page, 965 A.2d 1212, 1222 (Pa. Super. 2009).  The State Court's determinations were neither contrary to nor an unreasonable application of established federal law, nor an unreasonable determination of the facts. Petitioner's claim for habeas relief for ineffective assistance of trial counsel is, accordingly, without merit under the applicable standards.

---

[21] That is, the Court could only - on the record and on the merits - deny any claim of ineffective assistance of counsel, even *if* the Court were able to conclude any such particular claim was *not* procedurally defaulted , either because (a) the claim was adequately raised through State Court proceedings or (b) its default was attributable to ineffectiveness of appellate counsel under Martinez  (see *infra).*

[22] And the Court here notes that counsel's *electing a different course* in the exercise of his experienced legal judgment/strategy choices, or recognition of the non-maintainability of Petitioner's desired challenges or assertions, is quite another matter than the ineffectiveness in representation Petitioner purports.  See discussions of procedural history and State Court filings, *supra*.  See also Commonwealth's Answer at 40 (noting that "reasonableness of counsel's actions must be considered in light of the facts of a particular case" and "a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" while a defendant must overcome the presumption that the challenged action "might be considered sound trial strategy") (quoting Strickland at 689).

Petitioner also raises a claim to excuse any procedural default on the basis of ineffectiveness of *appellate* counsel, as noted *supra*. [23]  Any such claim lacks merit for purposes of habeas relief for the same reasons as set forth above.[24]

In sum, Petitioner has simply not met his burden of showing that he is entitled to *habeas corpus* relief as to this layered claim.  The determinations regarding the magnitude of the evidence against Petitioner and the assessments and dismissals of his sometimes amorphous and sometimes varying claims of ineffectiveness of counsel were objectively reasonable.  See generally  Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999 (discussing requirements of analysis under Strickland.  Cf.  Parrish v. Fulcomer, 150 F.3d 326, 328-29 (3d Cir. 1998) (noting that "counsel assistance does not become ineffective by failing to raise an issue when convincing Supreme Court case law shows it be without merit").

### E.  Actual innocence and/or miscarriage of justice

Petitioner's claim, to the extent one is incorporated in his Petition and related filings,[25] of actual innocence and a related miscarriage of justice is "not itself a constitutional claim, but

---

[23]  Cf. generally Martinez v. Ryan, 132 S. Ct. 1309 (2012) (holding that habeas petitioner may establish cause for his default of an ineffective assistance of trial counsel claim by demonstrating that PCRA counsel rendered ineffective assistance).  Until Martinez was decided, even cause for default could not be shown in this manner because there is no constitutional right to counsel in PCRA proceedings, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), nor a constitutional right to the effective assistance of counsel in PCRA proceedings.  Coleman, 501 U.S. at 752-53.

[24]  See also Commonwealth's Answer in Response to Supplemental Brief at 15 (observing that Martinez "did not create an automatic exception to the procedural default rule and "prisoner must demonstrate that the underlying ineffective assistance claim is substantial").

instead a gateway through which a habeas petitioner must pass to have his otherwise barred

constitutional claim considered on the merits." <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993).  As

set forth in the preceeding pages, the Court has afforded Petitioner consideration of each of his

claims on the merits.  Had it not, Petitioner's claims would not reach this gateway for reasons

articulated above and in the Commonwealth's pleadings.  <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298

(1995) (reiterating that "[t]he meaning of actual innocence. . . [requires that given Petitioner's

"new reliable evidence  . . . that was not presented at trial"] no reasonable juror would have

found the defendant guilty"); <u>Cristin v. Brennan</u>, 281 F.3d 414 (3d Cir. 2002).


## V.  <u>CERTIFICATE OF APPEALABILITY</u>

AEDPA codified standards governing the issuance of a certificate of appealability for

appellate review of a district court's disposition of a habeas petition.  As provided for in 28

U.S.C. § 2253, "[a] certificate of appealability may issue ... only if the applicant has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A

petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the

district court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537

U.S. 322, 327 (2003) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  "When the district

court denies a habeas petition on procedural grounds without reaching the prisoner's underlying

---

[25] <u>See</u>, <u>e.g.</u>, Petition (unnumbered, at Ground Three) ("Petitioner avers that the true facts and
merits of this case supports one whom is actually innocent."); <u>id.</u> ("[P]etitioner was not the
shooter but is actually innocent of the crimes charged.").

constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in these circumstances. Accordingly, a certificate of appealability will be denied.

## VI. CONCLUSION

For the reasons set forth above, the Petition for Writ of Habeas Corpus (ECF No. 4) will be denied and a certificate of appealability will also be denied.

Dated: February 13, 2014

_/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

Cc:     Counsel of Record

        Andre C. Lowry
        DP-3069
        S.C.I. Graterford
        Box 244
        Graterford, PA 19426